```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
UNITED STATES OF AMERICA,                :
                                         :       04 Cr. 267 (DLC)
             -v-                         :
                                         :           OPINION
ROBERTA DUPRE and BEVERLY STAMBAUGH,     :
                      Defendants.        :
                                         :
-----------------------------------------X
```

Appearances

For the Government:
Robin W. Morey
Assistant United States Attorney
Michael J. Garcia
United States Attorney for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

For Defendant Roberta Dupre:
Robert M. Baum
Assistant Federal Defender
Federal Defenders of New York, Inc.
52 Duane Street – 10th Floor
New York, NY 10007

For Defendant Beverly Stambaugh:
Denis Kelleher
Kelleher & Dunne LLP
17 Battery Place, 11th Floor
New York, NY 10007


DENISE COTE, District Judge:

    Following a lengthy exchange of correspondence between the parties, on April 6, 2007, restitution was ordered in the amount of $1,418,602.93 to the victims in this case.  This Opinion explains the basis for that award.

Background

A. Original Sentencing Proceedings and Appeal

Following their conviction at trial on fraud charges, on April 22, 2005, Roberta Dupre ("Dupre") and Beverly Stambaugh ("Stambaugh") were sentenced principally to 168 and 108 months in prison, respectively. At that time, the Court ordered the defendants to make restitution in an amount to be "determined within 90 days from the date the judgment of conviction is filed." The judgments of conviction were filed on April 29.

On May 16, the Government requested restitution in the amount of $1,881,274, supported by a list of individual victims and the specific amount of restitution to which each victim was entitled. The defendants consented to an award of $967,374.82 to 474 victims for whom there was wire-transfer evidence to support the calculation, but objected on May 26 that the remainder was based only on estimates. The Government had applied an estimated loss of $1,000 to 557 victims whom the defendants' records identified as participants in the "Roberta Project"[1] but for whom the Government did not have records of wire transfers. The defendants filed a notice of appeal from

---

[1] A description of the Roberta Project and the underlying criminal scheme may be found in the opinion from the Second Circuit. United States v. Dupre, 462 F.3d 131, 134-35 (2d Cir. 2006).

their convictions on April 25 and 28, 2005, and this Court neglected to enter the final restitution order.

On September 6, 2006, the Court of Appeals for the Second Circuit affirmed the defendants' convictions, but remanded the case for resentencing in connection with the enhancement for vulnerable victims which this Court had imposed. United States v. Dupre, 462 F.3d 131 (2d Cir. 2006). Specifically, it ordered this Court "either (1) to clarify the record as to which victims of the Roberta Project, if any, were particularly vulnerable and how so, or (2) to resentence defendants without an enhancement pursuant to U.S.S.G. § 3A1.1(b)." Id. at 147. It added that "[t]he District Court may, at its discretion, allow supplementation of the record as it deems appropriate." Id. The Second Circuit, however, "intimate[d] no view as to whether, if the 'vulnerable victims' enhancement is not reimposed, the District Court could use its discretion pursuant to United States v. Booker, [543 U.S. 220 (2005)], and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), to impose a sentence above the Guidelines range." Id. at 146 n.18.

B. December 15 Resentence

On December 15, 2006, the Court resentenced the defendants, imposing principally sentences of 135 months and 87 months on Dupre and Stambaugh, respectively. The issue of restitution was

3

not specifically addressed in either the parties' sentencing submissions or during the sentencing proceeding, but the defendants did not object to reimposition of the other terms of the sentence.

Judgments of conviction issued on December 20 neglected to reimpose the obligation to pay restitution. On December 27, the Government advised the Court of this error, and amended judgments of conviction issued on December 27 imposed as a term of supervised release that the defendants pay restitution in an amount to be determined "within 90 days from the date the amended judgment of conviction is filed." The defendants responded by a letter dated February 1, 2007, to which the Government responded on February 16. The parties were then ordered to meet and confer regarding various issues on or before March 5. To the extent any dispute remained, defendants' submissions were due March 9, and the Government's submissions were due March 13. Multiple letters then followed from both the Government and the defendants.

C. March 16 Order

The first round of submissions on the issue of restitution was fully submitted on March 15. Although the Court had ordered the parties to meet to try to resolve their disputes, those meetings did not result in an agreement over the amount owed.

The defendants did not dispute that a restitution order should be entered in the amount of $967,374.82, the amount to which the defendants had agreed in 2005, but objected to the Government's request for an order in the amount of $1,593,013.93, or over $600,000 more. In essence, the defendants urged that restitution should be ordered only in the amounts of and to the individuals who sent wire transfers to the defendants through Western Union or by bank wire, as reflected in the Government's records.

The disputed amount arose from the Government's mailing of a letter to roughly 700 victims on January 9, 2007. In response it received 145 affirmations from victims ("Affiants") claiming losses. Some of the affirmations were supported by documents created at the time the victims sent the money to the defendants, such as Western Union money transfer receipts, email messages, or confirmatory documents issued by the defendants. The Government's request for restitution in an amount in excess of $1.5 million had accepted the amounts identified in the affirmations.

An Order of March 16 entered restitution in an initial amount of $967,374.82, the amount as to which there was no dispute. It also ordered restitution to the Affiants as well with two conditions. If the affirmation was unsupported by contemporaneously generated documents, then the restitution

award could not exceed $1,000.  In the event an Affiant claimed a loss in excess of $1,000, restitution was ordered in an amount that "is reflected in or supported by any documents that the affiant has submitted or the Government has in its possession that were generated contemporaneously with the loss."  The Government was advised to provide the defendants with its revised calculation by March 20, and the defendants' objections were due March 22.

D. April 6 Order

Following the guidance offered in the March 16 Order, the Government lowered its request to $1,420,602.23.  As to Affiants who claimed losses in excess of $1,000 and had not submitted documents created contemporaneously with the loss to support their claim, the Government adopted the claimed amount of loss to the extent it was supported by the written confirmations which the defendants had sent to contributors during the fraud, and which were listed in Government Exhibit 85 ("GX 85"), which was introduced into evidence at trial.  Where an Affiant asserted a loss lower than the GX 85 figure, the Government used the lower amount.  Its March 19 submission included a spreadsheet detailing the bases for its calculations.

The defendants' response of March 22 preserved legal objections that they had made to an award above $967,374.82, and

6

objected (1) that $285,850 of the requested amount was for a period for which no award could be made, (2) that GX 85 was unreliable since the amounts reflected in the confirmations sent to victims sometimes reflected a bonus based on the victim's referral of another donor to the Roberta Project as well as the victim's own contribution, and (3) that the amounts were incorrect as to six victims.

The parties continued to exchange correspondence about these issues, but the Government's principal response was submitted on March 30, following a March 23 Order directing the Government to respond to the defendants' March 22 letter by March 30.  It withdrew requests on behalf of two of the six Affiants whose specific recoveries were in dispute.  An Order of April 2 required restitution in the amount of $1,417,602.93, in effect rejecting the defendants' challenges.  On April 4, the Government requested that another Affiant, Nina Eva Halferty ("Ms. Halferty"), be included in the restitution order.  The defendants objected through a letter of April 6.  The Court accepted the inclusion of Ms. Halferty, and on April 6, ordered restitution in the amount of $1,418,602.93.

Discussion

The defendants make several arguments to object to an award of restitution in excess of $967,374.82.  Each of those arguments is considered in turn.

A. Judicial Estoppel

Defendants argue that the doctrine of judicial estoppel precludes the Government from arguing for restitution in excess of that which was requested by the Government on May 16, 2005. In making this argument, the defendants rely principally on the Government's December 27, 2006 letter.  In that later letter, the Government advised the Court of the error of having failed to impose restitution and requested an amended judgment with a provision for a final restitution order to be entered within 90 days.  The 90 days would "give the Government sufficient time to address the factual objections raised by the defendant as to the Government's restitution submission [of May 16, 2005]." According to the defendants, the Government took a certain position in its May 16, 2005 submission on restitution, which it reiterated in its December 27, 2006 letter, and is now estopped from seeking restitution in an amount in excess of its 2005 request.

The requirements of judicial estoppel are not disputed here:  "First, the party against whom the estoppel is asserted

8

must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993).

Without considering whether the Government has taken "an inconsistent position," the matter is easily settled because the second requirement for application of the doctrine has clearly not been met. The Court did not adopt any Government argument concerning the amount of restitution before it issued the March 16 Order. The Court never having adopted "the prior inconsistent position," there can be no judicial estoppel.

B. Expiration of the 90-day Period on July 21, 2005

The defendants further claim that the 90-day statutory period for the final determination of victim losses expired on July 21, 2005, thereby precluding the Government from relying on any information received after that day to request a larger restitution award. As the defendants concede, however, a final restitution order may be entered after the 90-day period, United States v. Stevens, 211 F.3d 1, 6 (2d Cir. 2000), and there is a presumption of harmlessness for any failure timely to determine a victim's losses, a presumption which can be overcome by a showing of "actual prejudice." United States v. Zakhary, 357 F.3d 186, 188 (2d Cir. 2004). After all, the 90-day period is

9

not intended to protect defendants, "but rather to protect victims from the willful dissipation of a defendant's assets." United States v. Catoggio, 326 F.3d 323, 330 (2d Cir. 2003).

The defendants have not identified any prejudice from the delay. Instead, they claim that the Government's attempt to start a new 90-day time period, approximately 570 days after the expiration of the original 90-day time period, is "so extraordinary and exceptional as to be presumptively prejudicial affecting the defendants [sic] due process rights." They point to Doggett v. United States, 505 U.S. 647, 651-52 (1992), which is inapposite. Doggett addressed the speedy trial concerns raised by an eight-year delay between indictment and arrest. Id.

Furthermore, it is not entirely clear whether restarting the 90-day period from the entry of the December 27, 2006 judgment should be considered a "delay" at all. "[A] district court may resentence beyond the scope of the mandate, or may resentence a defendant on a limited remand using fresh considerations, if it has 'cogent' or 'compelling' reasons, including 'the need to correct a clear error.'" United States v. Johnson, 378 F.3d 230, 243 (2d Cir. 2004) (citation omitted); see also United States v. Boccagna, 450 F.3d 107, 119 n.7 (2d Cir. 2006) (leaving open the possibility of the district court increasing the restitution award upon remand in order to

10

compensate the victims fully).  Since the failure to enter a final restitution order in 2005 was clearly erroneous, the resentencing of the defendants can be made with the benefit of "fresh considerations," including new submissions from the Government on the amount of loss.  Therefore, the previous 90-day period may not even be relevant when assessing compliance with the 90-day period that followed entry of the December 27, 2006 judgment.

C. Requirements for an Amended Order Under Section 3664(d)(5)

The defendants also claim that the Government cannot increase its request on behalf of any individual victim because the upward adjustment violates the restitution statute.  Under 18 U.S.C. § 3664(d)(5), "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  After such final determination, however, "[i]f the victim subsequently discovers further losses, the victim shall . . . petition the court for an amended restitution order.  Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief."  Id.  The defendants point out that no victim has petitioned for an amended order.

The April 6, 2007 restitution order does not violate Section 3664(d)(5).  No final restitution order was entered prior to the Government's March 13, 2007 submission.  To the extent that the Government sought in that submission an increase in the amount of restitution due a victim based on newly discovered losses, it was only revising its own request, and was not seeking an amendment of a prior restitution order.

D. Contributions Made Prior to October 2002

The defendants object to a restitution award of $285,850 as either beyond the statute of limitations or beyond the time of the offense charged in the indictment.  Although the defendants cite Hughey v. United States, 495 U.S. 411, 413 (1990), to argue that restitution can only be imposed for the conduct that forms the basis of the count of conviction, that provision of Hughey has been superseded by amendments to the governing statute. See, e.g., United States v. Grice, 319 F.3d 1174, 1177 (9th Cir. 2003) (statute partially overruled Hughey to allow restitution for losses to persons harmed in the course of the defendant's scheme).

Under the current law, victims include "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme,

12

conspiracy, or pattern." 18 U.S.C. § 3663(a)(2). With amendments to the Victim and Witness Protection Act, "Congress broadened the scope of restitution from losses attributable solely to the offense of conviction to all losses caused in the course of a defendant's criminal conduct, <u>whether the defendant is convicted of each of those offenses or not</u>." <u>United States v. Boyd</u>, 222 F.3d 47, 50 (2d Cir. 2000) (citation omitted).

The defendants were convicted of two counts, one for conspiracy to commit wire fraud and one for wire fraud. While the period in each count was charged as 2002 to 2004, the first paragraph of the Indictment alleges that Dupre operated the scheme "[f]rom in or about 1994 through in or about February 2004." As the crimes of conviction included both a conspiracy and a scheme to defraud, these offenses necessarily included "as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663(a)(2). Therefore, regardless of the narrower time period in the Statutory Allegation for Count One and Count Two, restitution is allowed for all losses caused during the course of the criminal scheme, which extends from 1994.

In addition, the five-year statute of limitations for these counts does not limit the relevant period for restitution to acts occurring only after March 22, 1999. In the case defendants cite, <u>United States v. Silkowski</u>, 32 F.3d 682 (2d

13

Cir. 1994), restitution was limited by the statute of limitations because "the information did not charge and [defendant] did not enter a plea to a continuing offense pursuant to which [defendant] could have been 'prosecuted for conduct that predates the statute of limitations.'"  Id. at 689. Unlike in Silkowski, the defendants here were charged and convicted of continuing offenses, and therefore restitution is properly allowed for the entire period of their course of criminal conduct.

E. Amounts Reflected in GX 85

The defendants' objection to the use of amounts reflected in GX 85 can be swiftly rejected.  As already noted, that trial exhibit listed the confirmations that the defendants sent to donors during the fraud.  Generally, donors were told that they would receive a return of 500 to 1 on their donations.  As a result, the Government divided the GX 85 figure by 500 to arrive at the amount of loss.  The defendants object that applying that formula to the GX 85 figure may still overstate the loss since the confirmation might also reflect the extra benefit which was promised to donors who succeeded in convincing others also to contribute to the Roberta Project.  The Government, however, did not rely on the GX 85 figure alone in arriving at the restitution amount owed to a particular Affiant.  Where an

14

Affiant sought an amount that was less than the amount listed in GX 85, the Government used the lower figure. This is an entirely reliable method of calculating an individual victim's loss. GX 85 corroborates an Affiant's claim; it does not stand alone.

F. Halferty and Four Other Victims

The defendants object to the late inclusion of a $1,000 claim from Ms. Halferty. As the Government's April 4 letter explains, however, there was no error on Ms. Halferty's part for the late inclusion of her claim, but only a clerical error on the Government's part. The prompt submission of the affirmation by Ms. Halferty herself, and the clerical error by the Government in processing one out of 145 affirmations, constitutes the good cause required by Section 3664(d)(5) to merit amendment of the restitution order four days after it was originally issued.

The defendants also object to inclusion of claims from four specific victims: Jayne Arellano ("Ms. Arellano"), the Dream Dance Ministry ("Dream Dance"), Violet Zirili ("Ms. Zirili"), and Vicki Sue Boyer ("Ms. Boyer"). As detailed in the Government's March 30 letter, however, each of the victim's claims is sufficiently supported by the record. Ms. Arellano's $1,000 claim is based, not upon her affirmation which the

15

defendants object to as defective, but upon wire transfer records offered at trial. Dream Dance's $21,459 claim is supported by an affirmation with a signature by Johanna Haritatos, whose name is included in GX 85 as the contact person for Dream Dance. The $35,000 restitution amount for the late Ms. Zirili was not based on the affirmation from her daughter, which sought $117,000, but rather upon evidence such as FBI reports, notes handwritten by Dupre, and wire transfer forms. Lastly, GX 85 shows that contrary to the defendants' suggestion, Ms. Boyer's $2,000 is separate from the amount requested by another victim with the same address. Therefore, restitution amounts for all five victims were properly included in the final restitution award.

G. Request for Hearing

Lastly, the defendants argue that a hearing is required in order for the defendants to be able to contest the requested restitution as beyond the statute of limitations or as relevant conduct. "The district court is not required," however, "to hold a full-blown evidentiary hearing in resolving sentencing disputes." United States v. Maurer, 226 F.3d 150, 151 (2d Cir. 2000) (per curiam) (citation omitted). "The procedures used at sentencing are within the discretion of the district court so

16

long as the defendant is given an adequate opportunity to present his position as to matters in dispute." Id.

The restitution award here is supported by affirmations from the victims and by GX 85. The defendants had ample opportunity to challenge the bases for the restitution award, an opportunity of which they took advantage through a lengthy exchange of correspondence submitted to this Court. Therefore, no evidentiary hearing was required.

## Conclusion

Restitution was properly entered on April 6, 2007, in the amount of $1,418,602.93.

SO ORDERED:

Dated:   New York, New York
         June 4, 2007

_____
DENISE COTE
United States District Judge